## SOUTHERN STATES STEEL CO. v. BROWN & ROOT.  (No. 6863.)

(Court of Civil Appeals of Texas. Austin. May 20, 1925. Rehearing Denied July 1, 1925.)

1. Sales ⏀⟹52(5)—Evidence that negotiation between parties constituted contract for sale of steel held sufficient to support judgment allowing damages for failure to supply steel.

In action for price of steel furnished on contract, in which defendants counterclaimed for breach of contract to deliver, evidence that negotiations constituted contract for steel at price quoted, to be delivered as needed for construction of bridges, *held* sufficient to support judgment allowing damages for breach of contract to supply steel.

2. Sales ⏀⟹81(1)—Shipment of steel held to show construction of contract of sale by parties that shipments were to be made as material was needed.

Where nothing in contract for purchase of steel was said about immediate delivery, but confirmation of sale stated that first car was to be shipped in about 10 days after receipt of order at mill, and asked orders for remaining cars to be placed 3 weeks ahead of time, shipment of several cars at various dates shows that parties construed contract to mean that shipments would be made as material was needed, in view of fact that in acknowledging each order seller would urge buyer to place next order for shipment from 3 to 4 weeks ahead, or from 5 to 6 weeks before needed.

On Motion for Rehearing.

3. Sales ⏀⟹172—Fact that seller of steel was jobber held not to affect contract to supply steel.

Where transaction amounted to straight sale of steel in specified sizes, amount and length of each size to be furnished on specifications 5 or 6 weeks before steel was needed, fact that seller was jobber did not affect contract and authorize breach thereof for failure to furnish complete specifications on advance in price of steel.

Appeal from Williamson County Court; F. D. Love, Judge.

Action by the Southern States Steel Company against Brown & Root, in which defendants filed a counterclaim. From a judgment for less than it asked, plaintiff appealed. Affirmed.

Thomas, Frank, Milan & Touchstone, of Dallas, for appellant.

Wilcox & Graves, of Georgetown, for appellees.

BLAIR, J. Appellant sued appellees to recover a balance of $883.11 with interest, alleged to be due for its quantum meruit on a contract for the sale of 335,000 pounds of reinforcing steel, which contract it alleged to have rescinded for cause after the delivery of the invoice sued upon.

Appellees denied appellant's right to rescind, and counterclaimed for $848.74 and interest as damages, alleged to be due them because of a breach of the contract by appellant to deliver the steel.

The court tried the case without a jury, and rendered judgment for appellant for the amount sued for, and also rendered judgment for appellees on their counterclaim for the amount sued for, and offsetting these amounts rendered judgment for appellant for $49.70. The appeal is from this judgment.

The only question for determination here is whether the testimony is sufficient to support the judgment of the court. No formal written contract was executed, but all the negotiations between the parties were conducted by telegrams, telephone, and letters, and were begun on April 4, 1922, by the following telegram:

"April 4, 1922.

"Brown & Root, Contractors, Georgetown, Texas. We wish to quote you on new billet reinforcing bars for Georgetown contract the base price of two fifty five per cwt fob Texas common points for acceptance by next Friday stop after Friday two seventy base applies stop this business would be appreciated very much. Southern States Steel Company. (Charge.)"

Appellee Brown testified that he talked over the telephone with one Thickstun, appellant's manager, on or about April 7, 1922, and gave him the order for 335,000 pounds of steel at the prices shown in the following letter:

"April 7, 1922.

"Brown & Root, Contractors, Georgetown, Texas.

"Subject: Confirming order given by Mr. Brown for reinforcing steel for Fap 260 (306,-000 lbs. and Fap 265 (29,000 lbs.). * * *

"Material for the above contracts will be invoiced to at the following prices, f. o. b. cars at mill, with freight allowed to Georgetown or

to Texas common points, in minimum cars of 36,000 lbs.:

"Prices: Base (¾" and larger)..2.55 per cwt.
⅝" size only......... 2.60 " "
½" size only......... 2.65 " "
⅜" size only......... 2.80 " "
¼" size only......... 3.05 " "

"There will be no charge for cutting to your lengths, or for deformation; no other charges on straight bars.

"Material: Deformed new billet steel bars for state and federal aid projects.

"Shipments: First car to move in about ten days after receipt of order at the mill. Please note this: Place order for your remaining cars at least *three weeks* ahead of time. *Three weeks.*

"Terms: Thirty days net, or ½% ten days.
"Yours truly,
"Southern States Steel Company,
"Manager."

With the contract thus made, the following transactions took place between the parties relative to its fulfillment:

On April 10th appellees by wire ordered the first car shipped. Appellant acknowledged this order by letter as follows:

April 11, 1922.

"Brown & Root, Contractors, Attention of Mr. Herman Brown, Georgetown, Texas—Gentlemen: Your telegraphic order covering specifications for your first car is received, amounting to approximately 48,000 lbs. For your information in placing the balance of the tonnage required on this job, we want you to bear the following closely in mind:

"First, bear in mind the coal strike. The mills as a whole have an average of about forty days of coal on hand. You are to use your own judgment as to placing specifications with this situation in view.

"Second, in order to be on the safe side always, we want you to give us about three weeks' notice for shipment of the remaining cars.

"With your co-operation we believe we can carry you through without a hitch or without a delay. That is our purpose. Let us know your plans and call on us for any information that would make for better service.

"Yours truly,
"Southern States Steel Company,
"Manager."

On May 4th, appellant wrote appellees as follows:

"May 4, 1922.

"Brown & Root, Contrs., Attention of Mr. Herman Brown, Georgetown, Texas—Gentlemen: In order that you may protect yourself on shipments, we wish to advise that we are now making four to five weeks' shipments on bars, with the possibility of a further delay in moving material. This is due to the increased tonnage the mills are taking on. Place your order for the next shipment about five to six weeks before it is needed.

"Yours truly,
"Southern States Steel Company."

On May 25th appellees ordered out another car of steel. This was acknowledged by

appellant by letter dated May 27th, as follows:

"This will acknowledge receipt of your order of May 25, for material to be shipped to yourselves at Circleville, Texas. Deformed square new billet steel bars are to be furnished, at a base price of $2.55 f. o. b. St. Louis, with freight allowed to Circleville. Shipment to move about the fourth week of June. As yet we have not received your final instructions as to the routing of the balance of your material. Please advise. We wish to thank you very much for the above tonnage."

On June 12, 1922, appellant wrote appellees:

"Brown & Root, Contrs., Georgetown, Texas —Gentlemen: We quote from a letter received from the mill regarding the remaining tonnage of your contract: 'Referring to your letter of June 5, inquiring if Brown & Root should get in their specifications for the balance of the tonnage required in the Georgetown contract, will say there should be some understanding as to when complete lists will be in our hands, and that customers should not be allowed to specify against this for an indefinite period. We realize that when jobs are started the contractors cannot very well lay out the tonnage required for entire project, but in this instance this business has been closed for nearly two months, and we understand there is still a hundred ton or so of specifications to be placed. In view of conditions that confront us, we cannot make our plea too strong for customers to get in their specifications immediately, as we do not want them later to complain that we did not give them advance notice.'

"You will understand from the above that this is a matter that cannot be delayed any longer. We have written in regard to this before, and for your own protection, but so far have not received the specifications for the balance of this contract. You will realize that unless this is attended to promptly that we cannot be held responsible for any action that the mill would deem fit to take.

"Yours truly,
"Southern States Steel Company,
"Manager."

On July 3, 1922, appellant wrote appellees:

"Dallas, Texas, July 3, 1922.

"Brown & Root, Contrs., Attention of Mr. Herman Brown, Georgetown, Texas—We beg to advise that from now on all steel shipped to you for your Georgetown contract, or elsewhere, will be invoiced to you at the prices then prevailing. In other words, the price originally quoted you on your Georgetown contract is now void, due to failure to submit us your complete specifications.

"Yours truly,
"Southern States Steel Company,
"W. L. Thickstun, Manager."

On July 6, 1922, appellees made the following order:

"Georgetown, Texas, July 6, 1922.

"Southern States Steel Co., Dallas, Texas— Gentlemen: Please ship us the following bill

of steel for our various bridges .in Williamson county:

3 41-foot girders for Taylor.
50 square bars %" 40 ft.
10 square bars 1⅛" 40 ft.
10 square bars 1¼" 40 ft.
100 square bars ½" 40 ft.
50 square bars ¾" 40 ft.
50 square bars ⅞" 40 ft.
100 square bars ⅝" 40 ft.
3 41-foot girders for Circleville.'
10 square bars 1⅛" 40 ft. long
10 square bars 1¼" 40 ft. long
20 square bars ⅜" 40 ft. long
7 41-foot girders, or 38 ft. clear span, for Georgetown.
250 square bars ½" 40 ft. long
150 square bars ¾" 40 ft. long
50 square bars ⅞" 40 ft. long
50 square bars ⅝" 40 ft. long
10 square bars 1⅛" 40 ft. long
10 square bars 1¼" 40 ft. long
50 square bars ⅜" 40 ft. long

"We want this material for 17-foot clear roadway instead 18-foot, cut to lengths as shown on plan. The first of this next week we will send you order for one more car for Taylor which will be our last. We are sorry of the delay in ordering which is due to fact that our county engineer has just cleared up the roadway specifications in Washington.

"Very truly yours,
    "Brown & Root,
        "By Herman Brown."
"P. S.—Plan under separate cover."

On July 7, 1922, appellant wrote appellees:
    "July 7, 1922.
"Brown & Root, Contrs., Attention Mr. Herman Brown, Georgetown, Texas—Gentlemen: Your letter of July 6, 1922, covering orders for Taylor, Circleville and Georgetown is received, together with sheet G–264. Please refer to our letter of July 3, and advice us as quickly as possible if you wish these orders to be entered in accordance with same; that is, at the prices now prevailing, or $3.00 base f. o. b. Texas common points. We will hold the matter in abeyance until you advise.
    "Yours truly,
        "Southern States Steel Company,
            "Manager."

On July 8, 1922, appellees wired appellant:
"6253SA 13        1922 Jul 8 A M 10 33
    "Georgetown Tex 10A 8 106
"Southern States Steel Co., Dallas Tex.
'"You have contract subject to our contract we expect you to fill it.
        "Brown and Root."

Thereafter several letters and wires passed between the parties in which appellant insisted it had the right to rescind the contract because appellees had not submitted complete specifications of all steel purchased; while appellees insisted that they had purchased the steel on the open market at the time, to be shipped as needed on the four bridges let under the Georgetown contract of May 30, 1922, and referred to in appellant's telegraphic offer of April 4, 1922, to furnish steel for this contract. Appellee Brown also testified that they had been in no way negligent in sending the specifications, and had sent them as the steel was needed. The transactions culminated with the following letter:

    "Georgetown, Texas, August 21, 1922.
'Southern States Steel Co., Dallas, Texas— Gentlemen: We bought 350,000 pounds of reinforcing steel from you at a base price of $2.55. You delivered practically 100,000 pounds at this price; then we were forced to go on the market and buy approximately 250,-000 pounds of your order at a price of $2.98. The difference in this price and the price which you were to furnish steel at is approximately 43 cents per hundred or $1,025.00. We are giving you credit for $883.11, which leaves you owing us $141.89. These figures are approximate, but we are willing to settle in this way. Kindly let us have your check.
    "Very truly yours,
        "Brown & Root,,
            "By Herman Brown."

[1, 2] The trial court took appellees' view of these negotiations as being a contract for 335,000 pounds of steel at the price quoted, to be delivered as needed, in the construction of the four bridges in Williamson county. We think that these various letters and telegrams and appellee Brown's testimony are sufficient to support such conclusion. The letters and telegrams indicated that no importance was attached to the date of shipment, but that the only concern of appellant was the complete specifications in order that the manufacturer, who was overworked, might have time to cut the steel without delaying appellees. The amount and the character of the steel were agreed upon in the beginning. The only part, therefore, of the contract not complete was the mere matter of furnishing the specifications as to length of the bars needed. There is nothing in the record which in any way tends to prove that the question of the length in which steel bars should be cut had anything to do with the supply of steel; nor that it had anything to do with fulfillment of a contract for a certain quantity of steel bars of a certain character, but related solely to lengths needed and the time to be given the seller to cut it the required lengths, which it agreed to do without further expense to the purchaser under the sales contract. Nothing is said in the contract about immediate delivery, but to the contrary the confirmation of sale reads:

"Shipments: First car to move in about ten days after receipt of order at the mill. Please note this: Place order for your remaining cars at least three weeks ahead of time. Three weeks."

Several cars of steel were shipped on various dates, which to our minds evidences the fact that the parties construed the contract to mean that shipments would be made

as the material was needed, for in acknowledging each order the appellant would urge appellees to place their next order for shipment from about three to four weeks ahead, or "about five to six weeks before needed."

It is also urged that if it should be found that no agreement was made as to when the steel ordered should be shipped, then a reasonable time should be given in which to furnish the required specifications, and that appellees had not furnished the specifications within a reasonable time as a matter of law. This is an alternative proposition, and, since we have predicated our decision upon the proposition that the evidence is sufficient to support a finding by the trial court that it was agreed that the steel be shipped as needed, we do not deem it necessary to discuss this proposition.

The judgment will be affirmed.

Affirmed.

### On Motion for Rehearing.

[3] On motion for rehearing appellant attacks our findings that the amount and character of steel were agreed upon in the beginning, which should be corrected to the extent that the total amount was agreed upon in some four or five different sizes, the amount of each size and the length thereof furnished by appellees. No intimation was ever made until the letter to appellees of June 12th that time meant anything, except in so far as they might be delayed if specifications were not in several weeks before needed. In fact, as late as May 4, 1922, appellant wrote appellees, "Place your order for next shipment about five or six weeks before it is needed." We concluded from this letter and other letters of similar import, prior to the letter quoted from, that the trial court had the right to find that no importance was attached by the parties to the date of shipment, but that furnishing specifications for each shipment should be "five or six weeks before it is needed" in order that appellees might not be delayed on account of the manufacturers being crowded and overworked. The evidence is sufficient to support the trial court's judgment that the transaction amounted to a straight sale, and the fact that appellant was a "jobber" does not change the effect of the contract. Jobber or not, it made a straight contract to furnish so much steel in specified sizes, the amount and length of each size to be furnished on specifications five or six weeks before needed on the Georgetown contract, and the mere fact that appellees knew it was what was termed a "jobber" did not authorize it to breach the contract when the price of steel it contracted to deliver commenced to advance.

The motion is overruled.

Overruled.